COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
Park 80 Plaza West-One
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

LITE DePALMA GREENBERG
  & RIVAS, LLC
JOSEPH J. DePALMA
Two Gateway Center, 12th Floor
Newark, NJ  07102-5003
Telephone:  973/623-3000
973/623-0211 (fax)

Co-Liaison Counsel

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AVIVA PARTNERS LLC, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>EXIDE TECHNOLOGIES, et al.,<br><br>Defendants. | No. 3:05-cv-03098-MLC-LHG<br>**(Consolidated)**<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF APPLICATION OF LEAD PLAINTIFFS' COUNSEL FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES<br><br>DATE:    June 23, 2009<br>TIME:    10:00 a.m.<br>COURTROOM:    The Honorable<br>                               Mary L. Cooper |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................1

II.   THE STANDARDS GOVERNING THE AWARD OF
      ATTORNEYS' FEES IN COMMON FUND CASES..................................5

      A.    Lead Plaintiffs' Counsel Are Entitled to a Fee From the
            Common Fund They Created ...............................................................5

      B.    The Court Should Award Attorneys' Fees Using the Percentage
            Approach ..............................................................................................7

III.  THE REQUESTED 30% FEE IS FAIR AND REASONABLE
      UNDER THE PERCENTAGE OF RECOVERY METHOD......................10

IV.   THE REQUESTED 30% FEE IS FAIR AND REASONABLE
      UNDER THE THIRD CIRCUIT'S *GUNTER* FACTORS ...........................11

      A.    The Size and Nature of the Common Fund Created and the
            Number of Persons Benefited by the Settlement ................................11

      B.    The Skill and Efficiency of Lead Plaintiffs' Counsel ........................13

      C.    The Complexity and Duration of the Litigation..................................15

      D.    The Risk of Non-Payment...................................................................17

      E.    The Time Devoted to This Case by Lead Plaintiffs' Counsel
            Was Significant ..................................................................................22

      F.    Awards in Similar Cases ....................................................................23

            1.    The Requested Fee of 30% of the Settlement Fund Is
                  Within the Range of Fees Typically Awarded in Actions
                  of This Nature ..........................................................................23

            2.    The Requested 30% Fee Is at the Low End of Contingent
                  Fee Arrangements Negotiated in Non-Class Litigation............24

- i -

**Page**

V.    THE REQUESTED FEE IS REASONABLE UNDER THE
      LODESTAR CROSS-CHECK .......................................................................26

      A.    Hours Reasonably Expended by Counsel ...........................................27

      B.    Calculating the "Base" Lodestar ........................................................27

      C.    The Lodestar Multiplier .....................................................................28

      D.    Performing the Lodestar Cross-Check ...............................................28

VI.   LEAD PLAINTIFFS' COUNSEL'S APPLICATION FOR
      REASONABLY INCURRED LITIGATION EXPENSES SHOULD
      BE APPROVED ......................................................................................29

VII.  CONCLUSION .........................................................................................33

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abrams v. Lightolier, Inc.*,
  50 F.3d 1204 (3d Cir. 1995) .......................................................................30

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ....................................................................21

*Backman v. Polaroid Corp.*,
  910 F.2d 10 (1st Cir. 1990)..........................................................................21

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)........................................................................................6

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988),
  *aff'd*, 899 F.2d 21 (11th Cir. 1990)..............................................................11

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
  603 F.2d 263 (2d Cir. 1979) .......................................................................21

*Blum v. Stenson*,
  465 U.S. 886 (1984).........................................................................7, 25, 27

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)....................................................................................6, 7

*Bryant v. Avado Brands, Inc.*,
  100 F. Supp. 2d 1368 (M.D. Ga. 2000),
  *rev'd on other grounds sub nom. Bryant v. Dupree*,
  252 F.3d 1161 (11th Cir. 2001) ..................................................................18

*Camden I Condo. Ass'n v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ......................................................................9

*Cent. R.R. & Banking Co. v. Pettus*,
  113 U.S. 116 (1885).......................................................................................6

**Page**

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000) ........................................................13, 23, 30

*Dolgow v. Anderson*,
    43 F.R.D. 472 (E.D.N.Y. 1968)......................................................................6

*Florin v. Nationsbank, N.A.*,
    34 F.3d 560 (7th Cir. 1994) ...........................................................................9

*Geffon v. Micrion Corp.*,
    249 F.3d 29 (1st Cir. 2001)...........................................................................21

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) .........................................................................9

*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999).........................................................................21

*Green v. Nuveen Advisory Corp.*,
    295 F.3d 738 (7th Cir. 2002) .......................................................................21

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) ........................................................7, 10, 11, 26

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ...........................................................................29

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)..............................................................................11, 26

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
    (S.D.N.Y. Oct. 24, 2005)..............................................................................33

*In re Aetna Inc., Sec. Litig.*,
    No. MDL 1219, 2001 WL 20928
    (E.D. Pa. Jan. 4, 2001)......................................................................2, 23, 29

**Page**

*In re Apollo Group, Inc. Sec. Litig.*,
 No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
 (D. Ariz. Aug. 4, 2008)..................................................................20

*In re Apple Computer Sec. Litig.*,
 No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
 (N.D. Cal. Sept. 6, 1991) .............................................................21

*In re AremisSoft Corp. Sec. Litig.*,
 210 F.R.D. 109 (D.N.J. 2002) ........................................6, 7, 8, 13

*In re AT&T Corp. Sec. Litig.*,
 455 F.3d 160 (3d Cir. 2006) ....................................................7, 8

*In re ATI Techs., Inc. Sec. Litig.*,
 No. 01-2541, 2003 U.S. Dist. LEXIS 7062
 (E.D. Pa. Apr. 28, 2003) ..............................................................23

*In re Cell Pathways, Inc., Sec. Litig. II*,
 No. 01-CV-1189, 2002 U.S. Dist. LEXIS 18359
 (E.D. Pa. Sept. 24, 2002) .............................................................23

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001) ...........................................................8

*In re Computron Software, Inc., Sec. Litig.*,
 6 F. Supp. 2d 313 (D.N.J. 1998)....................................................7

*In re Comshare Inc. Sec. Litig.*,
 183 F.3d 542 (6th Cir. 1999) ......................................................21

*In re Digi Int'l, Inc. Sec. Litig.*,
 14 Fed. Appx. 714 (8th Cir. 2001) .............................................21

*In re EquiMed, Inc. Sec. Litig.*,
 No. 98-cv-5374 (NS), 2003 U.S. Dist. LEXIS 2998
 (E.D. Pa. Mar. 3, 2003)................................................................23

**Page**

*In re Fine Paper Antitrust Litig.*,
    751 F.2d 562 (3d Cir. 1984) .................................................................27, 28

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ..........................................................6, 7, 10, 23

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) ........................................................... *passim*

*In re JDS Uniphase Corp. Sec. Litig.*,
    No. C02-1486 CW (N.D. Cal. Nov. 27, 2007)............................................20

*In re Mobilemedia Sec. Litig.*,
    No. 96-5723 (AJL) (D.N.J. Feb. 24, 2000) ...................................................23

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ...............................................................8, 10, 28

*In re Prudential-Bache Energy Income P'ships*,
    No. 888, 1994 WL 202394 (E.D. La. May 18, 1994) ...................................17

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
    396 F. Supp. 2d 1178 (D. Colo. 2004) .........................................................19

*In re Residential Doors Antitrust Litig.*,
    No. 94-3744, 1998 WL 151804 (E.D. Pa. Apr. 2, 1998) .............................30

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001).....................................................14, 24

*In re Rite Aid Corp. Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Pa. 2005).............................................................29

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) .........................................................24, 27, 28

*In re RJR Nabisco Sec. Litig.*,
    No. MDL 818 (MBM), 1992 U.S. Dist. LEXIS 12702
    (S.D.N.Y. Aug. 24, 1992)..............................................................................24

**Page**

*In re Safety Components Int'l, Inc.*,
  166 F. Supp. 2d 72 (D.N.J. 2001)...................................................30

*In re Thirteen Appeals Arising out of the San Juan
Dupont Plaza Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995)...........................................................9

*In re U.S. Bioscience Sec. Litig.*,
  155 F.R.D. 116 (E.D. Pa. 1994) ...................................................25

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985),
  *aff'd*, 798 F.2d 35 (2d Cir. 1986).......................................15, 17, 28

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ..........................................................9

*J.I. Case Co. v. Borak*,
  377 U.S. 426 (1964).........................................................................6

*Levitin v. Painewebber, Inc.*,
  159 F.3d 698 (2d Cir. 1998) ..........................................................21

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
  487 F.2d 161 (3d Cir. 1973) ...............................................9, 26, 27

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
  540 F.2d 102 (3d Cir. 1976) ....................................................9, 26

*Longman v. Food Lion, Inc.*,
  197 F.3d 675 (4th Cir. 1999) ........................................................21

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...........................................15

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970).........................................................................6

**Page**

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)........................................................27

*New England Health Care Employees Pension
Fund v. Fruit of the Loom, Inc.*,
    234 F.R.D. 627 (W.D. Ky. 2006) ................................29

*Phillips v. LCI Int'l, Inc.*,
    190 F.3d 609 (4th Cir. 1999) ......................................21

*Rawlings v. Prudential-Bache Props.*,
    9 F.3d 513 (6th Cir. 1993) ............................................9

*Robbins v. Koger Props.*,
    116 F.3d 1441 (11th Cir. 1997) ..................................21

*Shuster v. Symmetricom, Inc.*,
    35 Fed. Appx. 705 (9th Cir. 2002) .............................21

*Silver v. H&R Block*,
    105 F.3d 394 (8th Cir. 1997) ......................................21

*Sprague v. Ticonic Nat'l Bank*,
    307 U.S. 161 (1939)........................................................6

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ......................................18

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993)........................................9

*Varljen v. H.J. Meyers & Co.*,
    No. 97 CIV. 6742 (DLC), 2000 U.S. Dist. LEXIS 16205
    (S.D.N.Y. Nov. 8, 2000)..............................................33

*Ward v. Succession of Freeman*,
    854 F.2d 780 (5th Cir. 1988) ......................................21

**Page**

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
        §78u-4(a)(4) ...................................................................................32
        §78u-4(a)(6) .....................................................................................9

## SECONDARY AUTHORITIES

1 Alba Conte, *Attorney Fee Awards* (2d ed. 1993)
        §2.02 ................................................................................................8

Denise N. Martin, Vinita M. Juneja, Todd S. Foster,
Frederick C. Dunbar, *Recent Trends IV: What Explains Filings
and Settlements in Shareholder Class Actions?*
        (NERA 1996) ..................................................................................24

Third Circuit Task Force Report, *Selection of Class Counsel*,
        208 F.R.D. 340 (Jan. 15, 2002) ....................................................9

Third Circuit Task Force, *Court Awarded Attorney Fees*,
        108 F.R.D. 237 (Oct. 8, 1985) ...................................................7, 9

# I.     INTRODUCTION

Lead Plaintiffs' counsel have succeeded in obtaining a $13.7 million cash Settlement Fund for the benefit of the Class.[1]  This is an outstanding result in the face of great risk and is a credit to Lead Plaintiffs' counsel's vigorous, persistent and skilled efforts who now respectfully move this Court for an award of attorneys' fees in the amount of 30% of the Settlement Fund plus payment of their litigation expenses incurred in prosecuting this Litigation in the amount of $397,994.92, plus interest on both amounts.[2]  In addition, Lead Plaintiffs, UNITE HERE National Retirement Fund ("UNITE")[3] and Lakeway Capital Management ("Lakeway"), seek payment for their time and expenses incurred by them in representing the Class in the amount of $6,417.29 and $12,842.00, respectively.

The requested fee is well within the range of percentages awarded in class actions in this District and Circuit, as well as numerous decisions throughout the

---

[1]     Submitted herewith in support of approval of the proposed settlement is the Memorandum of Law in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds ("Settlement Brief").

[2]     All terms used herein are defined in the Stipulation of Settlement dated as of March 26, 2009 (the "Stipulation") unless otherwise indicated.

[3]     UNITE was formerly known as Alaska Hotel and Restaurant Employees Pension Trust Fund.

country, and is the appropriate method of compensating counsel.[4]  "[A]wards of thirty

percent are commonly awarded in other settlements of securities fraud cases."[5]  The

amount requested is especially warranted in the light of the substantial recovery

obtained for the Class, the extensive efforts of counsel in obtaining this outstanding

result, and the significant risks in bringing and prosecuting this Litigation.  Absent this

settlement, continued litigation through trial and appeals would have likely taken

several more years at considerable expense without the Class receiving the benefits of

the settlement, thus creating the very real risk that the Class would ultimately receive

less, or even no recovery.

       This Litigation has been vigorously litigated and fiercely contested for nearly

four years.  Prosecution of this Litigation was undertaken by Lead Plaintiffs' counsel

on a wholly contingent basis and was extremely risky and difficult from the outset.

The Litigation is subject to the provisions of the Private Securities Litigation Reform

Act of 1995 ("PSLRA").  The effect of the PSLRA is to make it harder for investors to

bring and successfully resolve securities class actions.  A study of securities class

actions filed after the passage of the PSLRA between 1996 through 2001, found that

---

[4]       Attached hereto as Exhibit A is a listing of cases where courts in class actions in
this Circuit and other circuits have awarded fees of 30% or more of the settlement
fund.

[5]       *In re Aetna Inc., Sec. Litig.*, No. MDL 1219, 2001 WL 20928, at *14 (E.D. Pa.
Jan. 4, 2001) (court awarded 30% of a $82.5 million settlement).

35% of the cases filed were dismissed in defendants' favor. *See* Securities Class Action Case Filings 2007: A Year in Review, at 3 (Cornerstone Research 2007) [http://securities.cornerstone.com/pdfs/YIR2007.pdf].

Lead Plaintiffs faced and overcame significant risks in achieving the settlement for the Class. For example, Lead Plaintiffs successfully defeated Defendants' challenges to the pleadings and certified a class. Moreover, the effort required to achieve this settlement was substantial. The Litigation was pending for nearly four years, by that time counsel had: (1) conducted an extensive investigation into the facts alleged; (2) drafted a fact specific Consolidated Class Action Complaint for Violation of the Federal Securities Laws ("Complaint"); (3) consulted with in-house experts in damages, materiality and accounting; (4) thoroughly researched the law pertinent to the claims and defenses asserted; (5) successfully opposed Defendants' motion to dismiss the Complaint; (6) served written discovery requests on Defendants and over 30 third parties; (7) met and conferred with Defendants and third parties concerning the discovery requests; (8) reviewed and analyzed over 13 million pages of documents produced by Defendants and third parties; (9) took 5 depositions of fact witnesses; (10) responded to discovery requests from Defendants; (11) successfully certified a class; (12) participated in complex settlement negotiations; and (13) negotiated the

final terms of the settlement contained in the Stipulation.[6]  Indeed, Lead Plaintiffs' counsel and their paraprofessionals combined have expended nearly 10,000 hours in the prosecution of this Litigation with a resulting lodestar of slightly more than $4.11 million.  Therefore, the fee award requested by Lead Plaintiffs' counsel (30% or $4,110,000) is slightly less than the lodestar in the case and results in a so called "negative multiplier."

From the outset, Defendants have adamantly denied any liability, contested virtually every legal and factual issue and offered documents and testimony to support their contentions.  While Lead Plaintiffs believe that the evidence supports their claims and that they would survive summary judgment and ultimately prevail at trial, there is no question that continued litigation was fraught with risks for the Class with ultimate success far from certain.  As detailed in the Joint Declaration and the Settlement Brief, Lead Plaintiffs and Defendants strongly disagreed on the import and meaning of many of the documents produced and the witnesses' testimony in the case. There could be no way of predicting which interpretations, inferences or testimony this Court or a jury would accept.  The Court or a jury could have sided with Defendants' on some or all of the issues.  Despite these and other obstacles, Lead

---

[6]    The efforts of counsel in achieving this settlement are set forth in greater detail in the accompanying Joint Declaration of Trig R. Smith and Jeffrey S. Nobel in Support of Lead Plaintiffs' Motion for (A) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (B) an Award of Attorneys' Fees and Expenses ("Joint Declaration").

Plaintiffs were able to recover a settlement of $13.7 million for the benefit of the Class.

Lead Plaintiffs' counsel firmly believe that the settlement is the result of their creative and diligent efforts, as well as their reputations as attorneys who are unwavering in their dedication to the interests of the class and unafraid to zealously prosecute a meritorious case through trial and subsequent appeals. In a case asserting claims based on complex legal and factual issues which were opposed by highly skilled and experienced defense counsel, Lead Plaintiffs' counsel succeeded in securing a highly favorable result for the Class under difficult and challenging circumstances.

For all the reasons set forth herein, in the Joint Declaration and the Settlement Brief, Lead Plaintiffs' counsel respectfully submit that the requested attorneys' fees are fair and reasonable under the applicable legal standards and therefore, should be awarded by the Court. Moreover, the expenses requested are reasonable in amount and were necessarily incurred for the successful prosecution of the Litigation and therefore, should be approved.

## II.    THE STANDARDS GOVERNING THE AWARD OF ATTORNEYS' FEES IN COMMON FUND CASES

### A.    Lead Plaintiffs' Counsel Are Entitled to a Fee From the Common Fund They Created

It is well-settled that an attorney who maintains a suit that results in the creation of a fund or benefit in which others have a common interest may obtain fees from that

common fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). *See also Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See*, *e.g.*, *Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968). Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

Courts in this Circuit and District have consistently adhered to these teachings. *See*, *e.g.*, *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 128 (D.N.J. 2002) ("Attorneys who represent a class and aid in the creation of a settlement fund are entitled to compensation for legal services offered to the settlement fund under the common fund doctrine.") (citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab.*

*Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995) ("*GMC Trucks*")); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members."); *In re Computron Software, Inc., Sec. Litig.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998) (same).

The ultimate determination of the proper amount of attorneys' fees, of course, rests within the sound discretion of the district court. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000); *GMC Trucks*, 55 F.3d at 821; *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 168-69 (3d Cir. 2006); *AremisSoft*, 210 F.R.D. at 128.

## B.    The Court Should Award Attorneys' Fees Using the Percentage Approach

The Supreme Court has also consistently held that where a common fund has been created for the benefit of a class as a result of counsel's efforts, the award of counsel's fees should be determined as a percentage of the fund. *See*, *e.g.*, *Boeing*, 444 U.S. at 478-79.  Indeed, by 1984 this point was so well established that the Supreme Court needed no more than a footnote to address it in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class.").  *See also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (Oct. 8, 1985) (fee awards in common fund cases have historically been computed based upon

a percentage of the fund); 1 Alba Conte, *Attorney Fee Awards* §2.02, at 31-32 (2d ed. 1993) (same).

The Third Circuit and district courts within it have repeatedly approved the percentage-of-recovery method of awarding fees in common fund securities fraud cases. *See*, *e.g.*, *AT&T*, 455 F.3d at 164 ("In common fund cases such as this one, the percentage-of-recovery method is generally favored."). In *In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001) the court noted "[f]or the past decade, counsel fees in securities litigation have generally been fixed on a percentage basis rather than by the so-called lodestar method." In *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998) ("*Prudential II*") the court stated "[t]he percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" (citation omitted). *See also AremisSoft*, 210 F.R.D. at 128 ("the percentage-of-recovery method is used in common fund cases on the theory that class members would be unjustly enriched if they did not adequately compensate counsel responsible for generating the fund").[7] This view is in accord with the dictates of the PSLRA, which

---

[7]    A second method for calculating attorneys' fee awards, the lodestar/multiplier method, by which courts multiply the number of hours spent on the case by each attorney's reasonable hourly rate and then adjust that figure (by applying a multiplier) to reflect such factors as risk, the contingent nature of the litigation, the result

provides that a fee award should constitute "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. §78u-4(a)(6).

---

obtained, and the quality of the attorney's work (*see, e.g., Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973) ("*Lindy I*"), subsequently refined in *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (*en banc*) ("*Lindy II*")), has been discredited by two different task forces of prominent judges and practitioners convened to consider fees in class action cases by the United States Court of Appeals for the Third Circuit, first in 1985, and again in 2002.  *See* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 238 (Oct. 8, 1985); Third Circuit Task Force Report, *Selection of Class Counsel*, 208 F.R.D. 340 (Jan. 15, 2002).

Since the issuance of the Task Force Report in 1985, virtually every other circuit court has joined this Circuit and the United States Supreme Court in approving use of the percentage-of-the-fund method in common fund cases.  *See, e.g., In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995) (permitting use of percentage method, "[c]ontrary to popular belief, it is the lodestar method, not the [percentage] method, that breaks from precedent"); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994) (authorizing percentage and holding that use of lodestar/multiplier method was abuse of discretion); *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 564-65 (7th Cir. 1994); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-16 (6th Cir. 1993).  In fact, two Circuit Courts of Appeal have held that the percentage method is mandatory in common fund cases.  *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases"); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (rejecting the lodestar approach in all common fund cases and holding that the percentage method is mandatory).

### III.   THE REQUESTED 30% FEE IS FAIR AND REASONABLE UNDER THE PERCENTAGE OF RECOVERY METHOD

Under Third Circuit law, district courts have considerable discretion in setting an appropriate percentage-based fee award in traditional common fund cases. *See*, *e.g.*, *Gunter*, 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees."); *GMC Trucks*, 55 F.3d at 821.

Nonetheless, in exercising that broad discretion, the Third Circuit has also noted that a district court should consider "among other things," the following factors in determining a fee award, including:

1.      the size of the fund created and the number of persons benefited;

2.      the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel;

3.      the skill and efficiency of the attorneys involved;

4.      the complexity and duration of the litigation;

5.      the risk of nonpayment;

6.      the amount of time devoted to the case by plaintiffs' counsel; and

7.      the awards in similar cases.

*Gunter*, 223 F.3d at 195 n.1 (citing *Prudential II*, 148 F.3d at 336-40; *GMC Trucks*, 55 F.3d at 819-22). These fee award factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *Gunter*, 223 F.3d at 195 n.1.

Applying these factors to the present case, a 30% fee award to Lead Plaintiffs' counsel for achieving this highly favorable settlement is both justified and appropriate.

## IV.  THE REQUESTED 30% FEE IS FAIR AND REASONABLE UNDER THE THIRD CIRCUIT'S *GUNTER* FACTORS

### A.  The Size and Nature of the Common Fund Created and the Number of Persons Benefited by the Settlement

Lead Plaintiffs' counsel have secured a settlement that provides for a substantial and certain cash payment of $13,700,000, plus interest for the benefit of the Class. Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"). In *Ikon*, the court in awarding a 30% fee stated "[t]he most significant factor in this case is the quality of representation, as measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'"  194 F.R.D. at 194 (citation omitted). *See also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

The $13,700,000 cash settlement here provides a substantial and certain benefit to the Class.  This outstanding settlement was achieved as a direct result of the skill and tenacity of Lead Plaintiffs' counsel in the prosecution of this Litigation on behalf

of the Class. There is no question that Lead Plaintiffs' counsel overcame numerous obstacles and took significant risks in obtaining this excellent result for the Class. Indeed, the settlement was not reached until the case had been fiercely contested for nearly four years.

While Lead Plaintiffs believe that their claims have substantial merit, if litigation were to proceed there is, nonetheless, a significant risk that the Class could recover less than the amount of the settlement or nothing. Throughout the Litigation, Defendants have consistently maintained that Lead Plaintiffs could not establish liability or damages and have challenged virtually every factual and legal issue in this Litigation in an effort to defeat Lead Plaintiffs' claims. Despite Defendants' extensive efforts, Lead Plaintiffs were able to achieve a result of significant value to the Class. The settlement will provide Class Members compensation for their losses in Exide common stock, and avoid the substantial expense, delay and uncertainty of continued litigation. The $13.7 million recovery for the Class strongly supports the requested fee award.

Moreover, the number of persons benefited is undeniably large, the Class includes all persons who purchased Exide common stock during the Class Period. To date, the Notice of Proposed Settlement of Class Action ("Notice") and Proof of

Claim form have been mailed to more than 11,000 potential Class Members.[8]  It is therefore reasonable to conclude that thousands of Class Members will participate in and benefit from this settlement.

**B.     The Skill and Efficiency of Lead Plaintiffs' Counsel**

It took a great deal of skill to achieve what counsel achieved for the benefit of the Class.   Lead Plaintiffs' counsel's efforts in bringing this action to such a successful conclusion are the best indicator of the experience and ability of the attorneys involved.   *AremisSoft*, 210 F.R.D. at 132 ("'the single clearest factor reflecting the quality of class counsels' services to the class are the results obtained'") (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000)).  By any measure, Lead Plaintiffs' counsel's efforts have resulted in a highly favorable outcome for the benefit of the Class.  The substantial and certain recovery obtained for the Class is the direct result of the significant efforts of highly skilled and specialized attorneys who possess substantial experience in the prosecution of complex securities class actions.[9]  Lead Plaintiffs' counsel's reputations as attorneys who will zealously

---

[8]     *See* the previously submitted Declaration of Carole K. Sylvester Re: A) Mailing of the Notice of Proposed Settlement of Class Action and the Proof of Claim and Release Form and B) Publication of the Summary Notice ("Sylvester Decl."), dated May 13, 2009.

[9]     The experience of the law firms that represent Lead Plaintiffs in this action are set forth in the accompanying declarations of Lead Plaintiffs' counsel submitted herewith.  As those submissions show, Lead Plaintiffs' counsel are highly regarded

- 13 -

carry a meritorious case through the trial and appellate levels as well as their demonstrable ability to vigorously develop the evidence in this Litigation enabled them to negotiate the outstanding recovery for the benefit of the Class.

Unlike those cases where plaintiffs' counsel were able to "free ride" on the work of others (such as the SEC or other governmental agency), here Lead Plaintiffs' counsel – and only Lead Plaintiffs' counsel – developed the case against Defendants. While there was an SEC investigation started after the initial complaints were filed in this Litigation, the only benefit that Lead Plaintiffs' counsel received as a result of that investigation was that Defendants and the Company's auditor produced to Lead Plaintiffs the same documents that they produced to the SEC. Lead Plaintiffs' counsel, however, developed the evidence, successfully litigated and negotiated the highly favorable settlement of this action for the benefit of the Class. In light of these facts, the settlement achieved by the efforts of Lead Plaintiffs' counsel is even more remarkable and should be appropriately acknowledged. Courts have regularly recognized that the efforts of plaintiffs' counsel in achieving a favorable settlement should be accorded greater weight when achieved without the benefit of a governmental investigation.[10]

_____

and practice extensively in the highly complex field of shareholder securities litigation.

[10]   *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (in awarding 25% of a $193 million settlement fund, the court noted the skill and

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by plaintiffs' counsel.  *See*, *e.g.*, *Ikon*, 194 F.R.D. at 194; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  Defendants were represented by Katten Muchin Rosenman LLP and Wilentz, Goldman & Spitzer, PA, prominent firms with undeniable experience and skill.  The ability of Lead Plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition further confirms the superior quality of Lead Plaintiffs' counsel's representation.

## C.      The Complexity and Duration of the Litigation

There can be no dispute regarding the overall complexity and duration of this securities class action.  This was a complex class action involving complex legal and factual issues under the federal securities laws.  As the court noted in *Ikon*, "[t]here were the legal obstacles of establishing scienter, damages, causation. . . .  The court

---

efficiency of plaintiffs' counsel and outstanding results "in a litigation that was far ahead of public agencies like the Securities and Exchange Commission and the United States Department of Justice, which long after the institution of this litigation awakened to the concerns that plaintiffs' counsel first identified"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (In awarding 33-1/3% of the settlement fund, the court noted, "[i]n this Action, Plaintiffs' Class Counsel did not 'piggy back' on any prior governmental action . . . .  Plaintiffs' Class Counsel developed, litigated and successfully negotiated this Action by themselves, expending substantial time and effort.").

also acknowledges that securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA. . . .  The Act imposes many new procedural hurdles . . . .  It also substantially alters the legal standards applied to securities fraud claims in ways that generally benefit defendants rather than plaintiffs."  194 F.R.D. at 194-95.  The court's statement in *Ikon* is certainly applicable here.

This action has been vigorously prosecuted and defended for nearly four years. At nearly every stage of the litigation, counsel for Defendants have aggressively defended this action and expressed their belief that the Class would not prevail.  Even if Lead Plaintiffs got past summary judgment and were successful against Defendants at trial and obtained a significant judgment for the Class, Lead Plaintiffs' efforts to establish liability and damages in the Litigation, in all likelihood would not end with a judgment in the District Court, but would continue through one or more levels of appellate review.  In complex and substantial cases such as this, it must be recognized that even a victory at the trial stage does not guarantee ultimate success.  Both trial and judicial review are unpredictable and could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.  Indeed, as the court observed in *Warner Commc'ns*:

> Even a victory at trial is not a guarantee of ultimate success.  If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment.  An appeal could seriously and

adversely affect the scope of an ultimate recovery, if not the recovery itself.[11]

In sum, this highly complex case has been extensively litigated and vigorously contested over an extended period of time. Despite the novelty and difficulty of the issues raised, counsel secured an excellent result for the Class. As a result, this factor strongly supports the requested award.

### D.    The Risk of Non-Payment

Lead Plaintiffs' counsel undertook this Litigation on a contingent fee basis, assuming a significant risk that the Litigation would yield no recovery and leave them uncompensated. Unlike counsel for Defendants, who are paid an hourly rate and paid their expenses on a regular basis, Lead Plaintiffs' counsel have not been compensated for any time or expense since this case began in June 2005. Since that time, Lead Plaintiffs' counsel have expended nearly 10,000 hours in the prosecution of this Litigation with a resulting lodestar of over $4 million and incurred nearly $400,000 in litigation expenses. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. For example, in awarding counsel's attorneys' fees in *In re Prudential-Bache Energy Income P'ships*, No. 888, 1994 WL 202394, at *6, (E.D. La. May 18, 1994) the court noted the risks that plaintiffs' counsel had taken:

---

[11]    *Warner Commc'ns*, 618 F. Supp. at 747-48 (citing numerous examples).

> Although today it might appear that risk was not great based on Prudential Securities' global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation.  Counsel's contingent fee risk is an important factor in determining the fee award.  Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.  Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

The Seventh Circuit recently confirmed that the risk of loss is real and should be considered in a motion for attorneys' fees.  It reversed the district court's order that had rejected counsel's contention that lawyers faced the risk of nonpayment.  *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007) ("Because the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated.").

While securities cases have always been complex and difficult to prosecute, the PSLRA has only increased the difficulty in successfully prosecuting a securities class action.  Indeed, the risk of no recovery in complex cases of this type is very real and is heightened when counsel, as they did here, press to achieve the very best result for those that they represent.  Lead Plaintiffs' counsel addressed numerous difficult issues in opposing Defendants' motion to dismiss and there was no guarantee that Lead Plaintiffs' claims would survive the heightened pleading standards of the PSLRA.  As one court has noted: "An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard." *Bryant*

*v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).

Even though Lead Plaintiffs' claims got past the pleading stage, Lead Plaintiffs would have the substantial burden of proving, *inter alia*, that each of the Defendants was responsible for an omission or a misstatement that was material, that the omissions or misstatements impacted the market price of Exide common stock and caused damage to the Class, and, that each Defendant acted with scienter.  Moreover, the accounting issues related to the inventory issues during the Class Period were complex and because "GAAP generally tolerates a range of reasonable treatments" would be difficult to prove.  *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 396 F. Supp. 2d 1178, 1186 (D. Colo. 2004).

As noted herein and in more detail in the Settlement Brief and Joint Declaration, Defendants steadfastly maintained that they did nothing wrong and offered evidence and the testimony to support their positions.  Assuming Lead Plaintiffs were able to overcome Defendants' inevitable motions for summary judgment, and prove liability at trial, they still would have faced significant risks in proving loss causation and damages.  The determination of loss causation and damages is a complicated and subjective process, involving the analysis of many subjective factors.  As detailed in the Settlement Brief, proving loss causation would have been one of the major issues if this Litigation continued.  Because of the complex nature of establishing loss causation and damages, expert testimony is almost

always necessary to establish the amount – and indeed the existence – of actual damages. The damage assessments of the parties' respective experts would likely be polar opposites and the determination of the amount, if any, of damages suffered by the Class at trial would have turned into a "battle of the experts." To the extent that the Defendants could prevail on issues relating to liability or show that any assumptions made by Lead Plaintiffs' experts were incorrect or unreliable or could show that any portion of the market drop was due to factors other than the alleged fraud or that the market was inefficient, Lead Plaintiffs' claimed damages could be significantly reduced.

There are numerous cases where plaintiffs' counsel in contingent cases such as this, after the expenditure of thousands of hours, have received no compensation. Lead Plaintiffs' counsel are aware of many hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts of members of the plaintiffs' bar produced no fee for counsel. Two recent examples highlight this point. In a case against JDS Uniphase Corporation, after a lengthy trial involving securities claims, the jury reached a verdict in defendants' favor. *See In re JDS Uniphase Corp. Sec. Litig.*, No. C02-1486 CW, Verdict Questions Form (N.D. Cal. Nov. 27, 2007). While currently on appeal, in *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), the court on a motion for judgment

as a matter of law overturned a jury verdict of $277 million in favor of shareholders based on insufficient evidence presented at trial to establish loss causation. There are other appellate decisions affirming summary judgment and directed verdicts for defendants or overturning jury verdicts in securities class actions.[12]

Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable and difficult effort. The risk of nonpayment in this case was particularly high. As noted herein, this Litigation was very risky from the

---

[12]    *See also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for judgment n.o.v. was denied, on appeal the judgment was reversed and the case was dismissed – after 11 years of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (multimillion dollar judgment reversed after lengthy trial); *Geffon v. Micrion Corp.*, 249 F.3d 29 (1st Cir. 2001); *Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999); *Green v. Nuveen Advisory Corp.*, 295 F.3d 738 (7th Cir. 2002); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict); *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542 (6th Cir. 1999); *In re Digi Int'l, Inc. Sec. Litig.*, 14 Fed. Appx. 714 (8th Cir. 2001); *Levitin v. Painewebber, Inc.*, 159 F.3d 698 (2d Cir. 1998); *Longman v. Food Lion, Inc.*, 197 F.3d 675 (4th Cir. 1999); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (Court of Appeals reversed a jury verdict of $81 million on loss causation grounds against an accounting firm after a 19-day trial in Jacksonville, Florida); *Shuster v. Symmetricom, Inc.*, 35 Fed. Appx. 705 (9th Cir. 2002); *Silver v. H&R Block*, 105 F.3d 394 (8th Cir. 1997); *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988) (reversing plaintiffs' jury verdict for securities fraud).

outset as the defenses deployed against the claims were vigorously asserted.  There was never any admission of wrongdoing and very limited assistance, if any, from the SEC investigation.  Lead Plaintiffs also faced significant risks in proving liability as well as the amount, if any, of damages suffered by the Class at trial.  Thus, in addition to the very significant risks of nonpayment attendant to complex litigation of this type in general, there were very specific risks attendant to this particular Litigation. Notwithstanding this very real specter of nonpayment, Lead Plaintiffs' counsel committed significant resources of both time and money to the vigorous and successful prosecution of this action.  Few law firms could have devoted this kind of time and financial resources to this Litigation.  In view of the skill of Defendants' counsel and the legal and factual difficulties of this Litigation, the risk of never being compensated was real.  The contingent nature of counsel's representation strongly favors approval of the requested fee.

### E.    The Time Devoted to This Case by Lead Plaintiffs' Counsel Was Significant

To date, Lead Plaintiffs' counsel and their paraprofessionals have expended nearly 10,000 hours and incurred almost $400,000 in expenses prosecuting this Litigation for the benefit of the Class since its initiation.[13]  As discussed above and in the Joint Declaration, this action has been extensively litigated and vigorously

---

[13]    *See* the accompanying declarations of Lead Plaintiffs' counsel in support of an award of attorneys' fees and expenses.

defended for nearly four years.  Defendants fought Lead Plaintiffs at nearly every step of the Litigation in an effort to defeat Lead Plaintiffs' claims.  In short, the successful conclusion of this Litigation required Lead Plaintiffs' counsel to commit a very significant amount of time, personnel and expenses to this Litigation.

    **F.**    **Awards in Similar Cases**

          **1.**    **The Requested Fee of 30% of the Settlement Fund Is Within the Range of Fees Typically Awarded in Actions of This Nature**

There is no general rule as to what percentage of the common fund should be awarded as attorneys' fees.  The Third Circuit has observed that fee awards range from 19% to 45% of the settlement fund.  *GMC Trucks*, 55 F.3d at 822; s*ee also Ikon*, 194 F.R.D. at 194.  As noted above "awards of thirty percent are commonly awarded in other settlements of securities fraud cases."  *Aetna*, 2001 WL 20928, at *14.  Indeed, numerous courts within the Third Circuit have awarded fees of 30% or more of the recovery.  *See*, *e.g., In re ATI Techs., Inc. Sec. Litig.*, No. 01-2541, 2003 U.S. Dist. LEXIS 7062 (E.D. Pa. Apr. 28, 2003) (awarding 30%); *In re EquiMed, Inc. Sec. Litig.*, No. 98-cv-5374 (NS), 2003 U.S. Dist. LEXIS 2998 (E.D. Pa. Mar. 3, 2003) (awarding 33-1/3%); *In re Cell Pathways, Inc., Sec. Litig. II*, No. 01-CV-1189, 2002 U.S. Dist. LEXIS 18359, at *43 (E.D. Pa. Sept. 24, 2002) (awarding 30%); *Ikon*, 194 F.R.D. 166 (awarding 30%); *Cullen*, 197 F.R.D. 136 (awarding 33-1/3%); *In re Mobilemedia Sec. Litig.*, No. 96-5723 (AJL) (D.N.J. Feb. 24, 2000) (awarding 33-1/3%).

The requested fee also falls below the average of fee awards in a study of securities class actions conducted by National Economic Research Associates ("NERA") which found that "[r]egardless of case size, fees average approximately 32 percent of the settlement."  Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* at 12-13 (NERA 1996).  Moreover, the requested fee is within the range of three studies relied on by the District Court in *Rite Aid*, 146 F. Supp. 2d 706.  As the Third Circuit noted in *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005):

> In comparing this fee request to awards in similar cases, the District Court found persuasive three studies referenced by Professor Coffee: one study of securities class action settlements over $10 million that found an average percentage fee recovery of 31%; a second study by the Federal Judicial Center of all class actions resolved or settled over a four-year period that found a median percentage recovery range of 27-30%; and a third study of class action settlements between $100 million and $200 million that found recoveries in the 25-30% range were "fairly standard."  We see no abuse of discretion in the District Court's reliance on these studies.

*Id*. at 303 (citation omitted).

### 2. The Requested 30% Fee Is at the Low End of Contingent Fee Arrangements Negotiated in Non-Class Litigation

A fee based on the percentage method is also entirely consistent with negotiated fees in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients.  As explained in *In re RJR Nabisco*

*Sec. Litig.*, No. MDL 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at *20 (S.D.N.Y. Aug. 24, 1992):

> What should govern such [fee] awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases.

If this were a non-class action litigation, the customary contingent fee would likely range between 30 and 40 percent of the recovery.  *See, e.g.*, *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *accord Blum*, 465 U.S. at 903* ("'In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery.'") (citation omitted) (concurring opinion); *In re U.S. Bioscience Sec. Litig.*, 155 F.R.D. 116, 119 (E.D. Pa. 1994) (adopting Special Master's conclusion that 30% would likely have been negotiated in securities action).

Fees of 30% or more are common in private actions.  For example, the prominent Houston law firm of Vinson & Elkins prosecuted the case of *ETSI Pipeline Project v. Burlington N., Inc.*, No. B-84-979-CA, 1989 U.S. Dist. LEXIS 18796 (E.D. Tex. June 6, 1989), on a one-third contingent fee basis.  After obtaining a $1 billion verdict at trial and subsequently settling the case for $635 million, Vinson & Elkins realized a fee of approximately $212 million.  In a publicly-filed declaration, an attorney from Vinson & Elkins explained with respect to the fee paid in *ETSI Pipeline*: "Absent a willingness to pay on a current basis, it is my belief that a client

with a claim such as the one we prosecuted would be required to offer a significant percentage of the recovery to his counsel in order to obtain representation." Declaration of Harry Reasoner, ¶5 (submitted in *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, No. MDL 551 (D. Ariz. Nov. 30, 1990)).

Accordingly, the application of the *Gunter* factors makes clear that Lead Plaintiffs' counsel's requested fee of 30% of the Settlement Fund is fair and reasonable.

## V. THE REQUESTED FEE IS REASONABLE UNDER THE LODESTAR CROSS-CHECK

Although courts in this Circuit almost uniformly apply the percentage approach to determine attorneys' fees in common fund cases like this one, a court may also use a lodestar cross-check to confirm the reasonableness of the requested fee. In this case, if the cross-check is applied, the requested fee of 30% is clearly fair and reasonable.

The lodestar method, as set forth in the seminal cases *Lindy I* and *Lindy II*, is a two-step process. The first step requires that the court ascertain the "lodestar" figure by multiplying the number of hours worked by the normal hourly rate of counsel. The second step permits the court to adjust the lodestar by applying a multiple to take into account the contingent nature and risks of the litigation, the results obtained and the quality of the services rendered by counsel. *See Lindy I*, 487 F.2d at 167-68; *accord Hensley*, 461 U.S. 424.

- 26 -

### A.    Hours Reasonably Expended by Counsel

Under the *Lindy* cases, the court's determination of a reasonable fee begins with the number of hours expended in the prosecution of the action.  Lead Plaintiffs' counsel and their paraprofessionals here have spent, in the aggregate, 9,999.66 hours in the prosecution of this case.  For the convenience of the Court and in conformity with practice, the hours of counsel and their paraprofessionals have been submitted to the Court in a summarized form in the accompanying declarations of Lead Plaintiffs' counsel.[14]

### B.    Calculating the "Base" Lodestar

To arrive at the lodestar, the hours expended are typically multiplied by each attorney's respective hourly rate.  The hourly rate to be applied in calculating the lodestar is that which is normally charged in the community where the attorney practices.  *See Blum,* 465 U.S. at 895; *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 590-91 (3d Cir. 1984).  In addition, the United States Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds.  *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *Ikon*, 194 F.R.D. at 195.

---

[14]    *See Rite Aid*, 396 F.3d at 307 ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting."  The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.").

In determining whether the rates are reasonable, the Court should take into account the attorneys' legal reputation, experience, and status. The accompanying declarations of Lead Plaintiffs' counsel include a description of the background and experience of the firms who worked on this case. These descriptions provide support for the hourly rates charged in this case.

## C.     The Lodestar Multiplier

"Calculation of the lodestar, however, is simply the beginning of the analysis." *Warner Commc'ns*, 618 F. Supp. at 747. In the second step of the analysis, the court adjusts the lodestar to take into account, among other things, the result achieved, the quality of representation, the complexity and magnitude of the litigation, and public policy considerations. *Rite Aid*, 396 F.3d at 305-306. *Fine Paper*, 751 F.2d at 583; *Prudential II*, 148 F.3d at 341. The court then applies the appropriate multiplier to the lodestar number to account for these additional factors.

## D.     Performing the Lodestar Cross-Check

Finally, to perform the lodestar cross-check, the court should determine what the effective multiplier is, and then determine whether the resulting fee would be so unreasonable as to warrant a downward adjustment. The cumulative hours expended by Lead Plaintiffs' counsel and their paraprofessionals are 9,999.66 hours. The cumulative lodestar for the services performed by Lead Plaintiffs' counsel and their paraprofessionals in this action is $4,119,406.10. Lead Plaintiffs' counsel are seeking an award of 30% of the Settlement Fund which equals $4,110,000, therefore, the

requested fee represents a multiple of slightly less than one or a so-called "negative multiplier." This multiplier is much lower than multipliers applied in other securities cases. In cases of this nature, multipliers of 3,4, 5 or even more times the lodestar have been awarded to reflect the contingency fee risk and other relevant factors. *See In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (6.96 multiplier), *Aetna*, 2001 WL 20928, at *15 (3.6 multiplier), *Ikon*, 194 F.R.D. at 195 (2.7 multiplier). Thus, a 30% fee using a lodestar cross-check, is plainly reasonable.

## VI.   LEAD PLAINTIFFS' COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED

Lead Plaintiffs' counsel also request payment of expenses incurred by them in connection with the prosecution of this Litigation. Lead Plaintiffs' counsel have submitted separate declarations attesting to the accuracy of their expenses. Lead Plaintiffs' counsel have incurred expenses in the aggregate amount of $397,994.92 in prosecuting this Litigation.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.[15] The categories of

---

[15]   *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted); *see also New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006) ("In determining whether the requested expenses are compensable, the

expenses for which counsel seek payment here are the type of expenses routinely charged to hourly clients and, therefore, should be paid out of the common fund.

A significant component of Lead Plaintiffs' counsel's expenses are the cost of experts, consultants, and investigators.

In the post-PSLRA era the use of investigators to gather detailed fact-specific information from percipient witnesses in order to plead complaints that will survive motions to dismiss is a necessity. These in-house and private investigators conducted a substantial amount of work on behalf of the Class. They were able to identify and locate numerous witnesses who had knowledge of the alleged wrongdoing. Lead Plaintiffs' counsel's investigators interviewed some 20 witnesses with knowledge of Lead Plaintiffs' allegations. Lead Plaintiffs' counsel used the fruits (in the main) of this extensive investigation to plead a very fact specific complaint that survived Defendants' motion to dismiss, identify additional witnesses with relevant information concerning the alleged wrongdoing, evaluate the strengths and weaknesses of Lead Plaintiffs' case and assist in settlement negotiations. The investigators were instrumental in helping Lead Plaintiffs achieve this result for the benefit of the Class.

---

Court has considered 'whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases.'") (citation omitted); *In re Safety Components Int'l, Inc.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)); *Cullen*, 197 F.R.D. at 151; *In re Residential Doors Antitrust Litig.*, No. 94-3744, 1998 WL 151804, at *11 (E.D. Pa. Apr. 2, 1998).

Lead Plaintiffs' counsel also incurred the expense of in-house forensic accounting experts who assisted in drafting the accounting allegations and reviewed and assisted counsel in understanding the accounting documents produced.   These in-house accountants were necessary in assisting counsel to achieve the result obtained for the Class.   Lead Plaintiffs' counsel also incurred expenses of in-house economic consultants who performed several important tasks for counsel, including calculating shares available to trade, damage analyses under different scenarios, and prepared the Plan of Allocation.

Lead Plaintiffs' counsel were also required to travel in connection with this Litigation and thus incurred the related costs of meals, lodging and transportation. Lead Plaintiffs' counsel in this case traveled to conduct depositions, appear before the Court for hearings and attend mediation.   Lead Plaintiffs' counsel also incurred the costs of computerized research.   These are the charges for computerized factual and legal research services including LEXIS, Westlaw, Dow Jones, Disclosure, Inc., CDA Investment Technologies, Pacer Service Center and Choice Point.   It is standard practice for attorneys to use these services to assist them in researching legal and factual issues.   These services allowed counsel to access Exide's SEC filings, perform media searches on Exide, obtain analysts' reports on Exide, assist in developing Lead Plaintiffs' damage analyses and allowed the investigators to locate and obtain information on witnesses and Defendants.

Other expenses that were necessarily incurred in the prosecution of this Litigation include expenses for mediation fees, court reporters, photocopying and imaging costs, filing and witness fees, postage and overnight delivery charges and telephone and telecopier expenses.  Because these were all necessary expenses incurred by Lead Plaintiffs' counsel, they should be paid from the Settlement Fund.

Under the PSLRA, the Court may also award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  *See* 15 U.S.C. §78u-4(a)(4).  Lead Plaintiff UNITE requests payment of $6,417.29 and Lead Plaintiff Lakeway requests payment of $12,842.00.  As set forth in the accompanying Declaration of Richard N. Rust as Representative of UNITE HERE National Retirement Fund in Support of Plaintiffs' Motion for Final Approval of Settlement and for an Award of Attorneys' Fees and Expenses, UNITE and its counsel participated in this Litigation by reviewing pleadings and motions filed, complying with Defendants' discovery requests, consulting with counsel, communicating with UNITE's Board of Trustees and monitoring the status of settlement negotiations, and approving the settlement.  As set forth in the accompanying Declaration of Robert Lietzow as Managing Member of Lakeway Capital Management, LLC in Support of Plaintiffs' Motion for Final Approval of Settlement and for Case Contribution Award for Lead Plaintiffs, Lakeway and its counsel participated in this Litigation by participating in telephone conferences and meetings, participated it the Litigation and provided input, reviewed

pleadings and motions filed, reviewed plaintiffs' claims, complied with class certification discovery requests, and monitored the status of mediation and settlement negotiations. Reimbursement of such expenses should be allowed because it "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co.*, No. 97 CIV. 6742 (DLC), 2000 U.S. Dist. LEXIS 16205, at *14 n.2 (S.D.N.Y. Nov. 8, 2000). Moreover, courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *30 (S.D.N.Y. Oct. 24, 2005). The Lead Plaintiffs were actively involved in the Litigation and are deserving of the requested amounts.

## VII.   CONCLUSION

For all of the foregoing reasons, Lead Plaintiffs' counsel respectfully request that the Court approve Lead Plaintiffs' counsel's application for attorneys' fees and expenses, including expenses sought by Lead Plaintiffs.

DATED:  May 22, 2009                Respectfully submitted,

                                    COHN LIFLAND PEARLMAN
                                      HERRMANN & KNOPF LLP
                                    PETER S. PEARLMAN


                                    _____s/ Peter S. Pearlman_____
                                          PETER S. PEARLMAN

                                    Park 80 Plaza West-One
                                    Saddle Brook, NJ  07663
                                    Telephone:  201/845-9600
                                    201/845-9423 (fax)

                                    LITE DePALMA GREENBERG
                                      & RIVAS, LLC
                                    JOSEPH J. DePALMA
                                    Two Gateway Center, 12th Floor
                                    Newark, NJ  07102-5003
                                    Telephone:  973/623-3000
                                    973/623-0211 (fax)

                                    Co-Liaison Counsel

                                    COUGHLIN STOIA GELLER
                                      RUDMAN & ROBBINS LLP
                                    ARTHUR C. LEAHY
                                    JEFFREY D. LIGHT
                                    ANNE L. BOX
                                    TRIG R. SMITH
                                    CHRISTINA A. ROYCE
                                    655 West Broadway, Suite 1900
                                    San Diego, CA  92101
                                    Telephone:  619/231-1058
                                    619/231-7423 (fax)

IZARD NOBEL LLP
JEFFREY S. NOBEL
MARK P. KINDALL
29 South Main Street, Suite 215
West Hartford, CT  06107
Telephone:  860/493-6292
860/493-6290 (fax)

Co-Lead Counsel for Lead Plaintiffs

GAINEY & McKENNA
THOMAS J. McKENNA
295 Madison Avenue, Fourth Floor
New York, NY 10017
Telephone: 212/983-1300
212/983-0383 (fax)

Additional Counsel for Plaintiffs

S:\Settlement\Exide.set\BRF FEE 00059398.doc